JAMES BARRON CAREY *v.* STATE OF MARYLAND

[No. 1095, September Term, 1982.]

*Decided April 15, 1983.*

The cause was submitted on briefs to GILBERT, C. J., and LISS and WEANT, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and

*Michael R. Braudes, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Diane G. Goldsmith, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Stephen J. Savage, Assistant State's Attorney for Montgomery County,* for appellee.

WEANT, J., delivered the opinion of the Court.

James Barron Carey, appellant, was convicted in the Circuit Court for Montgomery County of sexual offenses in the first degree, kidnapping, and assault with intent to maim. Appellant elected a court trial and was tried before the Honorable John J. Mitchell. He received concurrent periods of incarceration of twenty years for the sexual offenses, ten years for kidnapping, and ten years for assault with intent to maim.

## I.

In endless cases, including this one, criminal defendants have requested courts at all levels to dismiss the charges because of a Md. Rule 746 violation — failure to commence trial within 180 days after appearance or waiver of counsel. The Court of Appeals ruled in *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), that the sanction for violation of the 180-day trial requirement is mandatory dismissal.

Since *Hicks, supra,* criminal defendants have demanded that the State jump with precision through the procedural hoops of Rule 746, citing that the Maryland Rules are precise rubrics to be read and followed. In *State v. Ricketts,* 290 Md. 287, 292, 429 A.2d 1025 (1981), the Court of Appeals reiterated its support for this interpretation of the Rules saying, they "are not guides to the practice of law but precise rubrics established to promote the orderly and efficient administration of justice and [they] are to be read and followed." The slightest mis-step, totally unrelated to any substantive or constitutional issue, has been raised as a shield to prosecution. But the shield may also be a sword. And so it is in this case. Appellant's motion to dismiss was

rightly denied because of his failure to "read and follow" the precise rubrics of Rule 736.

Rule 736 defines and governs what motions must be filed before criminal trials. A motion to dismiss for a Rule 746 violation must be "*filed* at any time before trial" (Rule 736 c) and "*shall be in writing* unless the court otherwise directs" (Rule 736 d) (emphasis added). *Pennington v. State,* 53 Md. App. 538, 454 A.2d 879, 881 (1983). Rule 736 e requires that any response by the State "shall be filed within 15 days and be accompanied by a statement of points and citation of authorities."

In *Pennington, supra,* at 881-82, Judge Lowe, speaking for this Court, said:

> Sections c, d and e of that rule (Rule 736) clearly anticipate something more than a last minute spinning hipshot . . . .
>
> While the State must justify any violation of Rule 746, we hardly think that it must come to court on the trial date fully prepared for a hearing on a motion to dismiss, of which nothing has been suggested let alone filed pursuant to Md. Rule 736. Implicit in Rule 736's procedural requirements of writing, grounds, relief, points and authorities and 15 days to respond is the opportunity for the State to prepare its justification for whatever is alleged and prayed by the appellant's motion.

In the case *sub judice,* appellant's attorney entered his appearance on 2 November 1981. Trial commenced 202 days later, clearly beyond the 180-day requirement mandated by Rule 746, on 25 May 1982. The first mention of the Rule 746 violation came after all other pretrial motions had been addressed. Appellant's "motion" to dismiss was nothing more than an *oral* spinning hipshot:

> The only other preliminary I had aside from a rule on witnesses was going to be a — I was going to move to dismiss *at this time for the record* on the basis of — all charges — on the basis of Hicks violation. [Emphasis added.]

Inasmuch as the trial court had not otherwise directed, Rule 736 d required that this half-hearted request be filed in *writing.* Whether it was a tactical decision or mere oversight, the last minute manner in which the State was apprised of this motion denied the State an opportunity to respond as contemplated by Rule 736. This surprise to the State was compounded by the fact that 181 days *after* the appearance of counsel, appellant had filed a *written* motion to suppress certain statements he had made to the police. Rule 736 b. Because appellant was obviously aware 181 days after appearance of counsel of the requirements of Rule 736 and yet failed to file at that time, or at any time later, a *written* motion to dismiss for a Rule 746 violation, the State was not unjustified in believing that this issue would not be raised. As Judge Wilner pointed out in *State v. Lattisaw,* 48 Md. App. 20, 28, 425 A.2d 1051, *cert. denied,* 290 Md. 717 (1981):

> Defense counsel presumably can count to 180 as well as prosecutors; they know when they entered their appearances — when the clock began to tick — and they can figure out when the time under the Rule expires.

The Md. Rules are precise rubrics to be read and followed by *all*. Appellant failed to comply with the requirements of Rule 736 and that failure was clearly prejudicial to the State. His motion to dismiss, therefore, was properly denied.

## II.

The second issue raised by appellant alleges that the evidence was insufficient to sustain a conviction for kidnapping. Article 27, § 337 defines kidnapping. It requires a carrying away (asportation) of the victim and either an *intent to carry* or an *intent to conceal* the victim. Appellant argues that the movement (asportation) and concealment (intent) presented in this case were integral parts of and essential to commission of the sexual offenses; hence

they cannot support a separate conviction for kidnapping. *See People v. Slayton,* 90 Mich. App. 151, 282 N.W.2d 266 (1979).

After binding and sexually assaulting the victim in the upstairs bedroom, appellant dragged her down two flights of steps (asportation) and then locked her in a basement closet (concealment) for one and one-half days. As noted by this Court in *Isaacs v. State,* 31 Md. App. 604, 616, 358 A.2d 273, *cert. denied,* 278 Md. 724 (1976), ". . . it matters not that the victim was asported but a short distance." The facts supporting appellant's conviction are technically within the purview of Article 27, § 337.

The kidnapping was a separate and distinct crime because the necessary asportation and concealment occurred *after* the sexual offenses had been terminated. Appellant told his victim, "this is your cage, this is where you are going to die" as he stuffed her in the basement closet.The only connection between the sexual offenses and the subsequent movement and concealment was an attempt to prevent the victim from escaping and reporting the sexual offenses. The movement and concealment were sufficiently distinct events from the sexual offenses to constitute the separate crime of kidnapping. *Lester v. State,* 9 Md. App. 542, 266 A.2d 361, *cert. denied,* 259 Md. 733 (1970).

### III.

Appellant's final contention is that the evidence established a reasonable doubt as to his legal sanity at the time he committed the offenses. Each side presented two experts who disagreed on the issue of whether appellant was able to conform his conduct to the requirements of law. With diverging expert opinion, the credibility and weight to be accorded each witness was clearly an issue for the court, as trier of fact, to resolve. *Hawkins v. State,* 34 Md. App. 82, 91, 366 A.2d 421, *cert. denied,* 279 Md. 683 (1976).

Dr. Crowley, a psychiatrist in private practice, testified for the State. He met with appellant immediately following his

arrest at the Montgomery County Police Department on 31 July 1981. Crowley testified that appellant was under the influence of alcohol at that time but opined that appellant was able to conform his conduct to the requirements of law. Dr. Crowley supported his opinion by pointing to various incidents occurring before the present crimes when appellant would act in such a bizarre and disturbing manner that his neighbors would complain to the police. On each occasion, appellant would sufficiently "clean up his act" when the police arrived to avoid being arrested.

In view of all the evidence presented we cannot say the trial court was clearly erroneous in determining that appellant was legally sane, beyond a reasonable doubt, at the time he committed these crimes. Md. Rule 1086.

*Judgments affirmed.*
*Costs to be paid by appellant.*